David E. Bower   SBN 119546
MONTEVERDE & ASSOCIATES PC
600 Corporate Pointe, Suite 1170
Culver City, CA 90230
Telephone: (213) 446-6652
Facsimile:  (212) 601-2610

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM BAKER, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>MIDLAND CREDIT MANAGEMENT, INC., MIDLAND FUNDING, LLC, and ENCORE CAPITAL GROUP, INC.<br><br>Defendants. | Case No.:  **'16CV2768 H    JLB**<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiff William Baker ("Plaintiff"), individually and on behalf of all others similarly situated, alleges on personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of his counsel as to all other allegations herein, as follows:

**NATURE OF ACTION**

1.    Plaintiff brings this action for damages, and other legal and equitable remedies, resulting from the illegal actions of defendants, Midland Credit Management, Inc., Midland Funding, LLC and Encore Capital Group, Inc. (collectively, "Defendants"), in contacting Plaintiff and Class members on their cellular telephones without their prior express consent within the meaning of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. (hereinafter referred to as the "TCPA").

- 1 -
CLASS ACTION COMPLAINT

2. Defendants violated the TCPA by contacting Plaintiff and Class members on their cellular telephones via an "automatic telephone dialing system," as defined by 47 U.S.C. § 227(a)(1), and/or by using "an artificial or prerecorded voice" as described in 47 U.S.C. § 227(b)(1)(A), without their prior express consent within the meaning of the TCPA.

3. Plaintiff brings this action for injunctive relief and statutory damages resulting from Defendants' illegal actions.

## JURISDICTION AND VENUE

4. The court has subject matter jurisdiction to grant the relief sought by the Plaintiff pursuant to 47 U.S.C. § 227(b)(3), 28 U.S.C. §§ 1331 and 1337; *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012) (holding that federal courts have federal question jurisdiction over TCPA claims.).

5. This Court has personal jurisdiction over Defendants because Defendants reside in and maintain their principal office in this district. Defendants have established minimum contacts showing they have purposefully availed themselves to the resources and protection of the State of California. Defendants do substantial business in California.

6. Venue is proper in the United States District Court for the Southern District of California pursuant to 28 U.S.C. §§ 1391(b)-(c) and 1441(a) because Defendants conduct business in the County of San Diego, and have their primary corporate headquarters within this judicial district. Further, a substantial part of the events giving rise to the claims, namely automated telephone calls to consumers, originated in this District.

## PARTIES

7. Plaintiff William Baker is an individual citizen of the State of Wisconsin, who resides in Waukesha, Wisconsin.

8. Defendant Midland Credit Management, Inc. ("MCM") is a Kansas corporation with its principal offices located at 3111 Camino Del Rio North, Suite 103, San Diego, CA 92108.

9. MCM is engaged in the business of a collection agency, using the mails and telephone to collect charged off consumer debts originally owed to others. It is a subsidiary of Defendant Encore Capital Group, Inc. ("Encore").

10. MCM is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes. MCM is a debt collector as defined in the Fair Debt Collection Practices Act, 15 U.S.C. § 1692a ("FDCPA").

11. Defendant Midland Funding LLC, ("Midland Funding") is a Delaware limited liability company with its principal place of business located at 8875 Aero Drive, Suite 200, San Diego, CA, 92123.

12. Midland Funding is engaged in the business of taking title to charged-off consumer debts, including credit card, auto deficiency and telecom receivables purchased from national financial institutions, major retail credit corporations, telecom companies and resellers of such portfolios. (Encore's SEC filing on form 10-Q, Aug. 8, 2008).

13. Midland Funding's affiliate MCM attempts to collect the alleged debts via correspondence and telephone calls. Midland Funding also frequently files lawsuits to collect the debts. Since 2006, Midland Funding has filed over 3,100 lawsuits in Waukesha County, Wisconsin, which has a population of approximately 400,000.

14. MCM and Midland Funding Corporation are under common ownership.

15. Both are direct or indirect subsidiaries of Encore Capital Group, Inc., a publicly traded Delaware corporation, with offices at 8875 Aero Drive, Suite 200, San Diego, CA 92123.

16. Encore raises money in public securities markets to acquire the debts which are transferred to Midland Funding or other similar entities and collected by MCM. Encore also is responsible for the overall collection strategies used to collect the accounts.

17. Encore's webpage states:
If you are one of our consumers, you probably know us as Midland Credit Management (or MCM). Midland Credit Management, a subsidiary of Encore Capital Group, works with consumers to resolve past-due obligations. MCM services accounts after the originating creditor has charged-off the account.
…

> If you have heard from MCM, your obligation to a lender is now your obligation to Midland Funding, LLC. Please give us a call at 1-877-240-2377 or visit online to learn about your options or discuss your account.
>
> Please understand that Midland Credit Management is a debt collector. Midland Credit Management's communications with consumers are an attempt to collect a debt. Any information we obtain will be used for that purpose.

18.   Encore is one of the largest debt buyers and debt collectors in the industry, with consumer debt portfolios in the hundreds of millions of dollars. Encore's 2013 10-K filing states that Encore has "one of the industry's largest financially distressed consumer databases." (Form 10-K, 12/31/13, p. 2).

19.   Encore purchased similar amounts of U.S. consumer credit card accounts in 2012 and 2011 and has purchased similar amounts each year from 2013 to the present.

20.   Encore describes itself as "a leading accounts receivable management firm" (Encore Capital Group Inc., Exhibit 99.1, filed with the SEC on March 15, 2006) and a "purchaser and manager of charged-off consumer receivables portfolios" (Encore Capital Group Inc., Form 424B3, filed March 1, 2011, prospectus summary).

21.   On March 10, 2005, Encore stated to public investors that it is a "50 year old purchaser and manager of consumer receivables portfolios" (Form 8-K filed by Encore with the SEC on March 10, 2005).

22.   Encore further stated: "From inception through December 31, 2010, we have invested approximately $1.8 billion to acquire 33.0 million consumer accounts with a face value of approximately $54.7 billion." (Form 10-K filed by Encore with the SEC for the year ending December 31, 2010, p. 1).

23.   Encore states that it is responsible for developing collection strategies. Its Form 10-K for the year ending December 31, 2010 states: "We expand and build upon the insight developed during our purchase process when developing our account collection strategies for portfolios we have acquired. Our proprietary consumer-level collectability analysis is the primary determinant of whether an account is actively serviced post-purchase. Throughout our ownership period, we

periodically refine this analysis to help determine the most effective collection strategy to pursue for each account." (*Id*., page 4).

24. Among these strategies is outbound telephone calls. "During 2010, we called approximately 8.6 million unique consumers, of which 1.8 million, or 21%, made contact with us." (Encore Capital Group, Inc. report on SEC Form 10-K for the year ending December 31, 2010, original page 4).

25. Similarly, in its Prospectus filed with the SEC on March 1, 2011 ("Prospectus Summary"), Encore Capital Group, Inc., stated:

> We are a systems-driven purchaser and manager of charged-off consumer receivable portfolios . . . We acquire receivable portfolios at deep discounts from their face values using our proprietary valuation process that is based upon an analysis of the individual consumer attributes of the underlying accounts. Based upon our ongoing analysis of these accounts, we employ a dynamic mix of collection strategies to maximize our return on investment. . . . Acquisitions of receivable portfolios are financed from operating cash flows and borrowings from third parties. . . .
>
> We have been in the collection business for 56 years and started purchasing portfolios for our own account approximately 19 years ago. . . .
> We have established certain relationships with credit card issuers, other lenders and resellers that allow us to purchase portfolios directly through negotiated transactions, and we participate in the auction-style purchase processes that typify our industry. In addition, we enter into "forward flow" arrangements in which we agree to buy receivables that meet agreed upon parameters over the course of the contract term.
>
> We evaluate each portfolio for purchase using the proprietary valuation and underwriting processes developed by our in-house team of statisticians. Unlike many of our competitors, which we believe primarily base their purchase decisions on numerous aggregated portfolio-level factors, including the originator, the type of receivables to be purchased, or the number of collection agencies the accounts have been placed with previously, we base our purchase decisions primarily on our analysis of the specific accounts included in a portfolio. Based upon this analysis, we determine a value for each account, which we aggregate to produce a valuation of the entire portfolio. We believe this capability allows us to perform more accurate valuations of receivable portfolios. We have successfully applied this methodology to receivables across multiple asset classes.
>
> After we purchase a portfolio, we continuously refine our analysis of the accounts to determine the best strategy for collection. As with our purchase decisions, our collection strategies are based on account level criteria. Our collection strategies include: . . .
> * outbound calling, driven by proprietary, predictive software, by our own collection workforce located at our three domestic call centers and our international call center in India; ....

26. According to Encore's 2013 Form 10-K, Encore *spent* more than $525 million to purchase consumer credit card accounts in the U.S. The face value of those accounts is in the tens of billions of dollars.

27. Moreover, Encore acquires portfolios for an average of approximately four cents on the dollar.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991
## (TCPA), 47 U.S.C. § 227

28. In 1991, Congress enacted the TCPA, in response to a growing number of consumer complaints regarding certain telemarketing practices.

29. The TCPA regulates, among other things, the use of automated telephone equipment, or "autodialers." Specifically, the plain language of section 227(b)(1)(A)(iii) prohibits the use of autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party.

30. According to findings by the FCC, the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

31. On February 15, 2012, the FCC released a Declaratory Ruling wherein it clarified that a party must obtain ***prior express written consent*** from the recipient prior to making automated telemarketing calls to the recipient's cellular telephone. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991* ("2012 FCC Declaratory Ruling"), 27 F.C.C.R. 1830, 27 FCC Rcd. 1830, 55 Communications Reg. (P&F) 356, 2012 WL 507959 (Feb, 15, 2012), at ¶ 2.

32. Upon information and belief, MCM knew that Plaintiff's cellular phone number was, in fact, assigned to Plaintiff. Even if it did not know, after MCM's first call to Plaintiff's wireless

- 6 -
CLASS ACTION COMPLAINT

phone, MCM had actual or constructive knowledge that Plaintiff's wireless telephone number was assigned to Plaintiff and not another person.

33. The TCPA Omnibus Declaratory Ruling and Order, FCC 15-72 at 40, states:

> We clarify, however, that callers who make calls without knowledge of reassignment and with a reasonable basis to believe that they have valid consent to make the call should be able to initiate one call after reassignment as an additional opportunity to gain actual or constructive knowledge of the reassignment and cease future calls to the new subscriber. If this one additional call does not yield actual knowledge of reassignment, we deem the caller to have constructive knowledge of such.

34. The Court is bound by all of the FCC's final orders relating to the TCPA. *Balschmiter v. TD Auto Fin. LLC*, 303 F.R.D. 508, footnote 4 (E.D. Wis. 2014) citing *CE Design, Ltd. v. Prism Bus. Media, Inc.*, 606 F.3d 443, 446 (7th Cir. 2010) (holding that under the Hobbs Act, the FCC's TCPA orders are binding); *Media, Inc.*, 606 F.3d 443, 446 (7th Cir. 2010) (holding that under the Hobbs Act, the FCC's TCPA orders are binding).

## FACTUAL ALLEGATIONS

35. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

36. Defendants sought to collect a debt that arose from a transaction incurred allegedly for personal, family or household purposes; specifically, a consumer credit card.

37. Plaintiff only had personal, non-business credit card accounts. Plaintiff opened and used credit cards for personal use, namely, purchases of household goods and services.

38. Upon information and belief, the original creditor sold Plaintiff's account to MCM's related company, Midland Funding, after the account was in default.

39. MCM uses at least one " automatic telephone dialing system" which is defined as "equipment which has the capacity--(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

40. MCM uses at least one "Predictive Dialer" as defined by the Federal Commutation Commission ("FCC").

41. On information and belief, MCM's Predictive Dialer is capable of dialing telephone numbers without human intervention.

42. MCM's Predictive Dialer is capable of delivering an automated prerecorded message.

43. Upon a phone call being answered by a live person, MCM's Predictive Dialer has the capability of transferring that phone call to a live operator.

44. Plaintiff has a cellular telephone assigned the telephone number XXX-XXX-9932. The first six digits of Plaintiff's cellular telephone number are redacted for privacy considerations.

45. Plaintiff is the regular user of the cellular telephone and it is generally carried on his person.

46. Plaintiff did not provide his cellular phone number to the original creditor of the debt MCM was attempting to collect – Citibank, N.A.

47. Plaintiff obtained the new telephone number, ending in 9932 after his Sears-branded Citibank credit card account was charged off and sold to Midland Funding.

48. Plaintiff never provided his new cellular telephone number, ending in 9942, to MCM, Midland Funding, Encore or to the original creditor or any agent or employee of any of these entities.

49. Plaintiff never provided MCM with express consent to receive prerecorded or automated calls by Defendants on his cellular telephone.

50. Plaintiff did not provide his cellular telephone number to Sears or Citibank "during the transaction that resulted in the debt owed" because Plaintiff had a different telephone number at the time he applied for the credit card.

51. Beginning in or around July 2016, MCM began calling Plaintiff's cellular telephone in connection with an alleged debt owed to Defendants. These calls were made to Plaintiff's cellular telephone number, and consisted of repeated autodialed and/or prerecorded calls.

52. MCM's calls were placed from 800-201-8370 and 877-209-4493.

53. Defendant MCM called Plaintiff's cellular phone at the following dates and times, attempting to collect an alleged debt allegedly owed to Midland Funding:

1    July 2, 2016, 8:10 AM

2    July 3, 2016, 8:07 AM

3    July 5, 2016, 8:20 AM

4    July 6, 2016, 9:38 AM

5    September 8, 2016, 8:32 AM

6    September 9, 2016, 10:07 AM

54. Each Defendant is, and at all times mentioned herein was, a "person", as defined by 47 U.S.C. § 153(39) ("The term 'person' includes an individual, partnership, association, joint-stock company, trust, or corporation.").

55. All telephone contact by Defendants to Plaintiff on his cellular telephone occurred via an "automatic telephone dialing system," as defined by 47 U.S.C. § 227(a)(1), and/or used "an artificial or prerecorded voice" as described in 47 U.S.C. § 227(b)(1)(A).

56. The telephone number that Defendants used to contact Plaintiff, with an "artificial or prerecorded voice" and/or made by an "automatic telephone dialing system," was assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

57. On information and belief, each phone call placed to Plaintiff by MCM was with the use of a Predictive Dialer, without a human hand manually dialing the telephone number.

58. Plaintiff did not provide "prior express consent" allowing Defendants to place telephone calls to Plaintiff's cellular phone utilizing an "artificial or prerecorded voice" or placed by an "automatic telephone dialing system," within the meaning of 47 U.S.C. § 227(b)(1)(A).

59. Upon information and belief, MCM obtained Plaintiff's cellular telephone number through skip-tracing.

60. Defendants' telephone calls to Plaintiff's cellular phone were not "for emergency purposes" as described in 47 U.S.C. § 227(b)(1)(A).

61. Defendants' telephone calls to Plaintiff's cellular phone utilizing an "artificial or prerecorded voice" or placed by an "automatic telephone dialing system" for non-emergency purposes and in the absence of Plaintiff's prior express consent violated 47 U.S.C. § 227(b)(1)(A).

62. Under the TCPA and pursuant to the FCC's January 2008 Declaratory Ruling, the burden is on Defendants and their agents to demonstrate that Plaintiff provided express consent within the meaning of the statute.

63. The Seventh Circuit has held that the "'called party' in § 227(b)(1) means the person subscribing to the called number at the time the call is made." *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 643 (7th Cir. 2012); *see also Osorio v. State Farm Bank*, F.S.B., 746 F.3d 1242, 1251-52 (11th Cir. 2014) ("called party" means the current subscriber and not the prior subscriber or intended recipient for purposes of the TCPA).

64. Defendants' calls to Plaintiff's cellular telephone invaded Plaintiff's privacy.

65. "In addition, all ATDS calls deplete a cell phone's battery, and the cost of electricity to recharge the phone is also a tangible harm…the cost is real, and the cumulative effect could be consequential." *Mey v. Got Warranty, Inc.*, No. 5:15-CV-101, 2016 U.S. Dist. LEXIS 84972 (N.D.W. Va. June 30, 2016).

66. Defendants' unwanted calls also constitute intrusion upon and occupation of the capacity of the Plaintiff's cell phone. The harm recognized by the ancient common law claim of trespass to chattels — the intentional dispossession of chattel, or the use of or interference with a chattel that is in the possession of another, is a close analog for a TCPA violation. *Id.*; *See also* Restatement (Second) of Torts § 217 (1965).

67. Defendants recently settled similar TCPA claims on a class-wide basis for approximately $20.6 million. The class period for the settlement is from November 2, 2006 through August 31, 2014, inclusive. Despite the settlement, Defendants have not changed their practices to cease placing autodialed calls to cellular telephones without consent.

## COUNT I
### KNOWING AND/OR WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227 *ET SEQ.*

68. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully stated herein.

69. The foregoing acts and omissions of Defendants constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227 *et seq.*

70. As a result of Defendants' knowing and/or willful violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and each member of the Class are entitled to treble damages of up to $1,500.00 for each and every call in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

71. Plaintiff and all Class members are also entitled to and do seek injunctive relief prohibiting such conduct violating the TCPA by Defendants in the future. Plaintiff and Class members are also entitled to an award of attorneys' fees and costs.

## COUNT II
### VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227 ET SEQ.

72. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

73. The foregoing acts and omissions of Defendant constitute numerous and multiple violations of the TCPA, including but not limited to each of the above cited provisions of 47 U.S.C. § 227 *et seq.*

74. As a result of Defendants' violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and Class members are entitled to an award of $500.00 in statutory damages for each and every call in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

75. Plaintiff and Class members are also entitled to and do seek injunctive relief prohibiting Defendant's violation of the TCPA in the future.

76. Plaintiff and Class members are also entitled to an award of attorneys' fees and costs.

## CLASS ACTION ALLEGATIONS

77. Plaintiff brings this action on behalf of himself and on behalf of all other persons similarly situated.

78. Plaintiff brings this action on behalf of a Class, defined as:

> All persons within the United States who, between September 1, 2014 and the date that this class is certified, inclusive, received a non-emergency telephone call from or on behalf of MCM to a cellular telephone through the use of an automatic telephone dialing system or an artificial or prerecorded voice, and who either did not provide their cellular telephone number to the alleged creditor or who revoked prior express consent to contact the person's cellular phone.

Plaintiff represents, and is a member of, the Class. Excluded from the Class are Defendant and any entities in which Defendant has a controlling interest; Defendants' agents and employees; any Judge to whom this action is assigned and any member of such Judge's staff and immediate family.

79. Plaintiff does not know the exact number of members in the Class, but Plaintiff reasonably believes that Class members number at minimum in the hundreds for each Class.

80. Plaintiff and all members of each Class have been harmed by the acts of Defendants.

81. This Class Action Complaint seeks injunctive relief and money damages.

82. The joinder of all Class members is impracticable due to the size and relatively modest value of each individual claim. The disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits. The Class can be identified easily through records maintained by Defendants and/or its agents.

83. There are well defined, nearly identical, questions of law and fact affecting all parties. The questions of law and fact involving the Class claims predominate over questions which may affect individual Class members. Those common questions of law and fact include, but are not limited to, the following:

   a. Whether Defendants and/or their agents made non-emergency calls to Plaintiff's and Class members' cellular telephones using an automatic telephone dialing system and/or an artificial or prerecorded voice;

   b. Whether Defendants and/or their agents utilized "skip tracing" methods to locate the cellular telephone numbers of non-customers;

   c. Whether Defendants can meet their burden of showing they obtained prior express consent (*i.e.*, consent that is clearly and unmistakably stated), to make such calls;

   d. Whether Defendants' conduct was knowing and/or willful;

  e. Whether Defendants sent Plaintiff and other members of each Class an initial collection letter containing the validation notice required by 15 U.S.C. § 1692g, within five days after the first telephone communication from MCM.

  f. Whether Defendants are liable for damages, and the amount of such damages;

  g. Whether Defendants should be enjoined from engaging in such conduct in the future; and

  h. Plaintiff asserts claims that are typical of each Class member. Plaintiff will fairly and adequately represent and protect the interests of the Class, and has no interests which are antagonistic to any member of the Class.

84. Plaintiff has retained counsel experienced in handling class action claims involving violations of federal and state consumer protection statutes, including claims under the TCPA.

85. A class action is the superior method for the fair and efficient adjudication of this controversy. Class-wide relief is essential to compel Defendants to comply with the TCPA. The interest of Class members in individually controlling the prosecution of separate claims against Defendants is small because the statutory damages in an individual action for violation of the TCPA are small. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated and the Class members, by definition, did not provide the prior express consent required under the statute to authorize calls to their cellular telephones.

86. Defendants have acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class as a whole appropriate. Moreover, on information and belief, Plaintiff alleges that the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

## JURY DEMAND

87. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court grant Plaintiff and all Class members the following relief against Defendants:

A. Injunctive relief prohibiting such violations of the TCPA by Defendants in the future;

B. As a result of Defendants' willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for himself and each Class member treble damages, as provided by statute, of up to $1,500.00 for each and every call that violated the TCPA;

C. As a result of Defendants' violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for himself and each Class member $500.00 in statutory damages for each and every call that violated the TCPA;

D. An award of attorneys' fees and costs to counsel for Plaintiff and the Class;

E. An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing appropriate Classes and any Subclasses the Court deems appropriate, finding that Plaintiff is a proper representative of the Classes, and appointing the lawyers and law firms representing Plaintiff as counsel for the Classes;

F. Such other relief as the Court deems just and proper.

Dated: November 9, 2016                    Respectfully submitted,

| | |
|---|---|
| Juan E. Monteverde<br>Miles D. Schreiner<br>MONTEVERDE & ASSOCIATES PC<br>The Empire State Building<br>350 Fifth Avenue, 59th Floor<br>New York, NY 10018<br>Telephone: (212) 971-1341<br>Facsimile: (212) 601-2610<br>jmonteverde@monteverdelaw.com<br>mschreiner@monteverdelaw.com<br><br>*of Counsel for Plaintiff* | By: */s/ David E Bower*<br>David E. Bower<br>MONTEVERDE & ASSOCIATES PC<br>600 Corporate Pointe, Suite 1170<br>Culver City, CA 90230<br>Tel: (310) 446-6652<br>Fax: (212) 601-2610<br>Email:  dbower@monteverdelaw.com<br><br>Counsel for plaintiffs |