# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: MIDLAND CREDIT MANAGEMENT, INC. TELEPHONE CONSUMER PROTECTION LITIGATION | Case No.: 11md2286-MMA (MDD)<br><br>Member Cases: 16cv2157-MMA (MDD)<br>16cv2768-MMA (MDD)<br><br>**ORDER RE: DEFENDANTS' MOTION TO COMPEL ARBITRATION, STRIKE CLASS ALLEGATIONS, AND STAY PROCEEDINGS**<br><br>[Doc. No. 601] |

Lead Plaintiffs William Baker ("Baker"), Curtis Bentley ("Bentley"), and Emir Fetai ("Fetai") (collectively "Lead Plaintiffs") bring this putative class action for alleged violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §§ 227, *et seq.* Doc. No. 651, Second Consolidated Amended Complaint ("SCAC"). Defendants Midland Funding LLC ("Midland"), Midland Credit Management, Inc. ("MCM"), and Encore Capital Group's ("Encore") (collectively, "Defendants") move to compel Bentley and Baker (collectively, "Plaintiffs") to arbitrate their individual claims, strike class allegations, and stay this case pursuant to the Federal Arbitration Act ("FAA"). Doc. No. 601-1 ("Mtn."). Plaintiffs filed an opposition [Doc. No. 652 ("Oppo.")], to which

Defendants replied [Doc. No. 661 ("Reply")].[1]  The Court found the matters suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1.d.1.  Doc. No. 668.  For the reasons set forth below, the Court **GRANTS IN PART** Defendants' motion.  Specifically, the Court **GRANTS** Defendants' motion to compel arbitration of Plaintiffs' claims on an individual basis and **STAYS** their individual member actions (16cv2157-MMA (MDD) and 16cv2768-MMA (MDD)).  The Court **DENIES** Defendants' request to stay the putative class action in this Multi-District Litigation ("MDL") and strike class allegations because Fetai has not been compelled to arbitrate his claims.

## BACKGROUND

Lead Plaintiffs, on behalf of themselves and the putative class, allege that Defendants violated the TCPA by contacting them on their cellular telephones using an Automatic Telephone Dialing System and by using an artificial or prerecorded voice without obtaining Plaintiffs' prior express consent.  *See generally, id.*

Plaintiffs each opened a credit card account with Citibank, N.A. ("Citibank"). Doc. No. 601-6 ("Peck Bentley Decl.") ¶ 9; Doc. No. 601-5 ("Peck Baker Decl.") ¶ 9. Both credit card agreements contain a South Dakota choice-of-law provision and identical arbitration agreements.  Doc. No. 601-4 ("Kilbury Bentley Aff."), Exhibit A at 6-7; Doc. No. 601-3 ("Kilbury Baker Aff."), Exhibit A at 6-8; Peck Bentley Decl., Exhibit 1 at 8; Peck Baker Decl., Exhibit 1 at 10-11.  The two arbitration agreements contain the following language:

> ***PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY.  IT PROVIDES THAT ANY DISPUTE MAY BE RESOLVED BY BINDING ARBITRATION.  ARBITRATION REPLACES THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO A JURY AND THE RIGHT TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING.  IN ARBITRATION,***

---

[1] Lead Plaintiffs also filed a notice of relevant authority in response to Defendants' Reply.  Doc. No. 663.

**A DISPUTE IS RESOLVED BY AN ARBITRATOR INSTEAD OF A JUDGE OR JURY. ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN COURT PROCEDURES.**

*Agreement to Arbitrate:* Either you or we may, without the other's consent, elect mandatory, binding arbitration for any claim, dispute, or controversy between you and us (called "Claims").

**What Claims are subject to arbitration?**
All Claims relating to your account, a prior related account, or our relationship are subject to arbitration, including Claims regarding the application, enforceability, or interpretation of this Agreement and this arbitration provision. All Claims are subject to arbitration, no matter what legal theory they are based on or what remedy. . . . Claims and remedies sought as part of a class action, private attorney general or other representative action are subject to arbitration on an individual (non-class, non-representative) basis, and the arbitrator may award relief only on an individual (non-class, non-representative) basis.

**Whose Claims are subject to arbitration?**
Not only ours and yours, but also Claims made by or against anyone connected with us or you or claiming through us or you, such as a co-applicant or authorized user of your account, an employee, agent, representative, affiliated company, predecessor or successor, heir, assignee, or trustee in bankruptcy.

. . .

**Broadest Interpretation.** Any questions about whether Claims are subject to arbitration shall be resolved by interpreting this arbitration provision in the broadest way the law will allow it to be enforced. This arbitration provision is governed by the [FAA].

. . .

**What about debt collections?**
We and anyone to whom we assign your debt will not initiate an arbitration proceeding to collect a debt from you unless you assert a Claim against us or our assignee. We and any assignee may seek arbitration on an individual basis of any Claim asserted by you, whether in arbitration or any proceeding, including in a proceeding to collect a debt. You may seek arbitration on an

> individual basis of any Claim asserted against you, including in a proceeding to collect a debt.
>
> . . .
>
> *Survival and Severability of Terms*
> This arbitration provision shall survive: (i) termination or changes in the Agreement, the account, or the relationship between you and us concerning the account; (ii) the bankruptcy of any party; and (iii) any transfer, sale or assignment of your account, or any amounts owed on your account, to any other person or entity. If any portion of this arbitration provision is deemed invalid or unenforceable, the entire arbitration provision shall not remain in force. No portion of this arbitration provision may be amended, severed or waived absent a written agreement between you and us.

Peck Bentley Decl., Exhibit 1 at 8; Peck Baker Decl., Exhibit 1 at 10-11.

The credit card agreements also state that "[w]e may assign any or all of our rights and obligations under this Agreement to a third party." Peck Bentley Decl., Exhibit 1 at 9; Peck Baker Decl., Exhibit 1 at 12.

Citibank ultimately sold both accounts to Midland. Peck Baker Decl., Exhibit 2; Peck Bentley Decl., Exhibit 2. The bills of sale and assignment state that Citibank assigned to Midland both of Plaintiffs' accounts. Kilbury Bentley Aff., Exhibit A at 13; Kilbury Baker Aff., Exhibit A at 68. The purchase and sale agreements governing those sales specify that Citibank assigned to Midland all right, title, and interest in Plaintiffs' accounts. Doc. No. 661-1 ("Banda Decl."), Exhibit A at 6, Exhibit B at 35.

## LEGAL STANDARD

The FAA permits "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States district court . . . for an order directing that . . . arbitration proceed in the manner provided for in [the arbitration] agreement." 9 U.S.C. § 4. Upon a showing that a party has failed to comply with a valid arbitration agreement, the district court must issue an order compelling arbitration. *Id.*

The Supreme Court has stated that the FAA espouses a general policy favoring arbitration agreements. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). Federal courts are required to rigorously enforce an agreement to arbitrate. *See id.* Courts are also directed to resolve any "ambiguities as to the scope of the arbitration clause itself . . . in favor of arbitration." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 475-76 (1989).

In determining whether to compel a party to arbitration, the Court may not review the merits of the dispute; rather, the Court's role under the FAA is limited "'to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.'" *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008) (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)). If the Court finds that the answer to those questions are "yes," the Court must compel arbitration. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). If there is a genuine dispute of material fact as to any of these queries, a district court should apply a "standard similar to the summary judgment standard of [Federal Rule of Civil Procedure 56]." *Concat LP v. Unilever, PLC*, 350 F. Supp. 2d 796, 804 (N.D. Cal. 2004).

Agreements to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Courts must apply ordinary state law principles in determining whether to invalidate an agreement to arbitrate. *Ferguson v. Countrywide Credit Indus., Inc.*, 298 F.3d 778, 782 (9th Cir. 2002). As such, arbitration agreements may be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability. *See Concepcion*, 563 U.S. at 339-41.

## DISCUSSION

Defendants contend that Plaintiffs' claims are subject to the arbitration agreements within the Citibank credit card agreements. Mtn. at 9. Plaintiffs oppose arbitration. *See generally*, Oppo.

A.  **Choice of Law**

The Court's first inquiry is whether Plaintiffs each entered into an arbitration agreement with Defendants. This inquiry necessarily requires the Court to discuss the enforceability of the agreements under the rubric of the applicable state's contract law. As such, the Court must decide whether South Dakota law is the applicable substantive law. Defendants contend that South Dakota law applies based on the credit card agreements' choice of law clauses. *See* Mtn. at 13-14. Plaintiffs do not dispute Defendants' contention. *See* Oppo. at 8-10 (explaining South Dakota contract law).

Federal common law applies to the choice-of-law rule determination because jurisdiction in this case is based on federal question. *See In re Sterba*, 852 F.3d 1175, 1179 (9th Cir. 2017); *see also Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006). Federal common law adheres to the Restatement (Second) of Conflict of Laws, which states that courts should honor the parties' choice-of-law to govern their claims in dispute, unless: (1) "the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice" or (2) honoring the parties' choice "would be contrary to a fundamental policy of a state which has a materially greater interest" in the dispute. Restatement (Second) of Conflicts of Law § 187(2) (1988).

Here, the credit card agreements contain governing law provisions stating that "[f]ederal law and the law of South Dakota . . . govern the terms and enforcement of th[ese] Agreement[s]" because the credit on the accounts extend from South Dakota. *See* Peck Bentley Decl., Exhibit 1 at 9; Peck Baker Decl., Exhibit 1 at 12. Accordingly, this Court finds that South Dakota has a substantial relationship to this dispute and application of South Dakota law would not be contrary to any fundamental policy of California. As such, where applicable, this dispute is governed by South Dakota law.

B.  **Agreements to Arbitrate Exist**

Plaintiffs dispute that there are valid agreements to arbitrate on three grounds: (1) Defendants have not provided sufficient evidence of valid agreements to arbitrate

6

11md2286-MMA (MDD)

between Plaintiffs and Citibank; (2) the plain language of the arbitration agreements prohibit assignment to Midland; and (3) Defendants have not provided sufficient evidence of Citibank's assignment of the right to enforce the arbitration agreements to Midland. Oppo. at 10-22.

### 1. *Evidentiary Value of Credit Card Agreements*

First, Plaintiffs question whether the credit card agreements provided by Defendants are valid because Defendants have not produced the original agreements sent to them. Oppo. at 14. They note that the fact sheets accompanying the credit card agreements provided by Defendants list 2018 as the date they were issued. *Id.* (noting that the agreements refer to periodic interest rates as of March 27, 2018); *see also* Peck Bentley Decl., Exhibit 1 at 12; Peck Baker Decl., Exhibit 1 at 6. As Defendants acknowledge, Bentley opened a Shell MasterCard credit card account with Citibank in 2006, and Baker opened a Sears MasterCard credit card account with Citibank in 1996. Mtn. at 12-13. The Court further notes that the credit card agreements themselves list a 2011 copyright date. Peck Bentley Decl., Exhibit 1 at 10; Peck Baker Decl., Exhibit 1 at 13. Because the discrepancies in dates suggests the credit card agreements submitted by Defendants do not control Plaintiffs' relationships with Citibank, Plaintiffs argue Defendants have not provided sufficient evidence of agreements to arbitrate with Citibank. Oppo. at 14. Plaintiffs concede, however, that they did agree to the credit card agreements with Citibank, including arbitration agreements, when they originally opened their accounts. *See id.* at 19.

Sample credit card agreements or exemplars of what a defendant normally gives to its customers is evidence of the written contract the plaintiff received. *See Hadlock v. Norwegian Cruise Line, Ltd.*, No. SACV 10-0187 AG (ANx), 2010 WL 1641275 at *1 (C.D. Cal. Apr. 19, 2010) ("An exemplar of what Defendant normally gives to customers is evidence of what Plaintiff received."). However, "[u]nauthenticated sample credit card agreements, one dated many years after the credit card was first used and therefore accepted by plaintiff, is not the type of evidence the court can use to support an order

7

compelling arbitration." *Danley v. Encore Capital Grp., Inc.*, No. 15-CV-11535, 2015 WL 7733450 at *3 (E.D. Mich. Dec. 1, 2015).

Here, Mr. Peck, a custodian of records for Citibank, attests to the validity of the credit card agreements as "cop[ies] of the card agreement[s] that Citibank mailed to" Plaintiffs in connection with their accounts. Peck Bentley Decl. ¶ B; Peck Baker Decl. ¶ B. Plaintiffs have not come forward with any evidence to rebut that the terms produced by Defendants are the same as those entered between Plaintiffs and Citibank. *See Danley v. Encore Capital Grp., Inc.*, No. 15-CV-11535, 2016 WL 2851343, at *4 (E.D. Mich. May 16, 2016); *see also Coppock v. Citigroup, Inc.*, No. C11-1984-JCC, 2013 WL1192632, at *4 (W.D. Wash. Mar. 22, 2013) (accepting an exemplar agreement where the plaintiff failed to produce evidence that the 2001 agreement was not the agreement that governed her account). In fact, Plaintiffs' opposition brief concedes that the terms of the credit card agreements provided by Defendants are the terms at issue in this motion. Oppo. at 4-6 (quoting relevant terms of the credit card agreements).

In summation, Citibank's custodian of records authenticated the credit card agreements and declares they were sent to Plaintiffs, Plaintiffs concede that the terms of the arbitration agreements within those credit card agreements apply to this motion, and Plaintiffs provide no evidence that different arbitration agreements govern the parties' relationships. Based on the foregoing, the Court accepts that the arbitration agreements in the exemplars proffered by Defendants are the agreements that govern the parties' relationships. *See Drozdowski v. Citibank, Inc.*, No. 2:15-cv-2786-STA-cgc, 2016 WL 4544543, at *3-4 (W.D. Tenn. Aug. 31, 2016) (finding an exemplar agreement that has been authenticated as the terms sent to the cardholder sufficient evidence of a written agreement); *see also Danley*, 2016 WL 2581343, at *4 (same).

### 2. *Parties to the Agreement*

Plaintiffs concede that they entered into valid agreements to arbitrate with Citibank by using their credit card accounts. Oppo. at 19. The Court is likewise persuaded that valid agreements to arbitrate exist between Plaintiffs and Citibank because Defendants

provided account statements for both Plaintiffs, evincing their use of their credit card accounts. *See* S.D. Codified Laws § 54-11-19 (1983) (stating that in South Dakota, "use of an accepted credit card or the issuance of a credit card agreement and the expiration of thirty days from the date of issuance without written notice from a card holder to cancel the account creates a binding contract between the card holder and the card issuer"); *see also* Kilbury Bentley Aff., Exhibit A; Kilbury Baker Aff., Exhibit A. Plaintiffs also do not challenge the validity of the arbitration agreements generally, nor do Plaintiffs allege any of the generally applicable contract defenses in order to avoid the arbitration agreements. *See generally*, Oppo. As the existence of the above-referenced arbitration agreements are not in dispute by either party, the Court finds valid agreements to arbitrate exist between Plaintiffs and Citibank.

While acknowledging agreements to arbitrate exist between Plaintiffs and Citibank, Plaintiffs challenge whether Defendants have the requisite standing to compel arbitration as they are neither parties nor signatories to the credit card agreements. Oppo. at 10-21. Defendants contend that they have standing to enforce the arbitration agreements because Citibank assigned all rights to Midland. Mtn. at 24-30. Plaintiffs counter that the terms of the credit card and arbitration agreements prohibit assignment to Defendants, and that Defendants have not provided sufficient evidence of any assignment to Midland. Oppo. at 10-21. In reply, Defendants contend the arbitration agreements' delegation clauses prohibit the Court from determining whether Citibank assigned the right to compel arbitration to Midland. *See* Reply at 11-12.

a. <u>The Court's Authority to Determine the Parties Covered by the Agreements</u>

"Under the [FAA], parties to a contract may agree that an arbitrator rather than a court will resolve disputes arising out of the contract." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, No. 17-1272, --S.Ct.--, 2019 WL 122164 at *2 (2019). "When parties empower the arbitrator to decide certain threshold issues in a delegation clause, the courts are divested of the authority to decide those issues." *Soto v. Am. Honda Motor Co.*, 946 F. Supp. 2d 949, 954 (N.D. Cal. 2012) (citing *United Broth. of Carpenters & Joiners of*

*Am., Local No. 1780 v. Desert Palace, Inc.*, 94 F.3d 1308, 1310 (9th Cir. 1996)). Courts determine arbitrability "'[u]nless the parties clearly and unmistakably provide otherwise.'" *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (quoting *AT&T Technologies, Inc. v. Commc'ns Workers*, 475 U.S. 643, 649 (1986). Where the parties have clearly and unmistakably agreed to arbitrate arbitrability, a court's role is narrowed from deciding whether there is an applicable arbitration agreement to only deciding whether there is a valid delegation clause. *See Rent-A-Ctr., West, Inc. v. Jackson*, 561 U.S. 63, 68-72 (2010).

Here, the arbitration agreements grant the arbitrator the authority to decide "the application, enforceability, or interpretation of this Agreement and this arbitration provision." Peck Bentley Decl., Exhibit 1 at 8; Peck Baker Decl., Exhibit 1 at 11. "However, the threshold issue of whether the delegation clause is even applicable to a certain party must be decided by the Court." *Soto*, 946 F. Supp. 2d at 954; *see also Henry Schein, Inc.*, --S.Ct.--, 2019 WL 122164 at *4 ("To be sure, before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists."); *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1126-28 (9th Cir. 2013). In other words, a delegation clause granting authority to an arbitrator to decide issues of application, enforceability, or interpretation are only applicable to the parties of the agreement. Accordingly, the Court must first decide which parties are bound by the delegation clauses before the arbitrator can determine the applicability, enforceability, and interpretation of the arbitration agreements. *See Soto*, 946 F. Supp. 2d at 954; *see also In re Toyota Motor Corp. Hybrid Brake Mktg., Sales, Practices & Products Liab. Litig.*, 828 F. Supp. 2d 1150, 1159 n.5 (C.D. Cal. 2011) (finding the defendant "cannot invoke the right to the benefits of the Purchase Agreement because it was not a party to the agreement; thus, the threshold issue of whether [the defendant], as a nonsignatory, may compel Plaintiffs to submit to arbitration under the Purchase Agreements must be decided by this Court"); *accord In re Toyota Motor Corp. Unintended Acceleration*

*Mktg., Sales Practices, & Products Liab. Litig.*, 838 F. Supp. 2d 967, 987 (C.D. Cal. 2012).

  b. The Agreements' Reference to Third Parties

 Plaintiffs argue that the plain language of the credit card and arbitration agreements prohibit assignment of the right to compel arbitration. Oppo. at 11-12. They contend that the arbitration provisions only allow two parties to compel arbitration: "you" and "we." *Id.* at 11. The credit card agreements define "we, us, and our" as "Citibank, N.A., the issuer of your account," and defines "you, your, and yours" as "the person who applied to open the account" and "any other person responsible for complying with this Agreement." Peck Bentley Decl., Exhibit 1 at 6; Peck Baker Decl., Exhibit 1 at 8. According to Plaintiffs, this "plainly does not include 'successors' or 'assignees' in the definition of 'we.'" Oppo. at 11. Plaintiffs further argue that the "Survival and Severability of Terms" clauses explicitly prohibit Citibank from assigning its right to enforce the arbitration agreements to Midland absent Plaintiffs' consent. *Id.* at 11-12, 17-19.

 Under South Dakota law, "[t]he goal of contract interpretation is to determine the parties' intent." *Tri-City Assocs., L.P. v. Belmont, Inc.*, 845 N.W.2d 911, 915 (S.D. 2014). Courts must examine contracts "as a whole" and "give words their 'plain and ordinary meaning.'" *Coffey v. Coffey*, 888 N.W.2d 805, 809 (S.D. 2016) (quoting *Gloe v. Union Ins. Co.*, 649 N.W.2d 252, 260 (S.D. 2005)). Courts must also interpret contracts to give a reasonable and effective meaning to all terms and not in a way that renders a portion of the contract meaningless. *Id.*; *Tri City Assocs.*, 845 N.W.2d at 915 (quoting *Estate of Fisher v. Fisher*, 645 N.W.2d 841, 846 (S.D. 2002)).

 The arbitration agreements are not as limited as Plaintiffs assert. While the arbitration agreements do indicate that "you" or "we," meaning Citibank, may arbitrate claims arising out of "our relationship[,]" the credit card agreements extend the arbitration agreements to "Claims made by or against anyone connected with us . . ., such as . . . an employee, agent, representative, affiliated company, predecessor or successor,

heir, assignee, or trustee in bankruptcy."[2]  Peck Bentley Decl., Exhibit 1 at 6, 8; Peck Baker Decl., Exhibit 1 at 8, 11.  Even further, the arbitration provisions specifically state that "[w]e and anyone to whom we assign your debt will not initiate an arbitration proceeding to collect a debt from you unless you assert a Claim against us or our assignee.  We and any assignee may seek arbitration on an individual basis of any Claim asserted by you, whether in arbitration or any proceeding, including in a proceeding to collect a debt."  Peck Bentley Decl., Exhibit 1 at 8; Peck Baker Decl., Exhibit 1 at 11.  Finally, the arbitration agreements state that they are to be interpreted in the "broadest way the law will allow it to be enforced."  Peck. Bentley Decl., Exhibit 1 at 8; Peck Baker Decl., Exhibit 1 at 11.  Ignoring these provisions would render them meaningless.  *See Coffey*, 888 N.W.2d at 809.  Accordingly, the arbitration agreements contemplate that Citibank's assignees are entitled to compel arbitration.  *See Johnson v. CACH, LLC*, No. 1:16-cv-383-BLW, 2016 WL 7330571 at *3-5 (D. Idaho Dec. 16, 2016) (finding the arbitration agreement specifically extended the right to arbitrate to the nonsignatory because the arbitration agreement defined "us" as the bank's "parent, subsidiaries, affiliates, licensees, predecessors, successors, assigns, and any purchaser of your account").

The Court finds Plaintiffs' argument regarding the "Survival and Severability of Terms" clauses is similarly without merit because it relies on Plaintiff's limited view of the arbitration agreements.  The "Survival and Severability of Terms" clauses provide that the arbitration agreements survive the sale or assignment of the accounts and that

---

[2] These arbitration agreements are distinguishable from the arbitration agreement in *Velazquez v. Midland Funding, LLC*, No. 1:18-cv-000430CWD, 2018 WL 6492602 at *12 (D. Idaho Dec. 10, 2018), which Plaintiffs rely heavily upon.  In *Velazquez*, the agreement extended the arbitration provision only to "'[c]laims made by or against anyone connected with us, . . . such as . . . an employee, agent, representative or an affiliated/parent/subsidiary company.'"  *Id.*  The district court concluded that, Midland did not have such a relationship with Citibank or the plaintiff because it had only acquired some of Citibank's charged off accounts.  *Id.*  The instant arbitration agreements specifically extend to assignees.

12

11md2286-MMA (MDD)

"[n]o portion of th[ese] arbitration provision[s] may be amended, severed or waived absent a written agreement between you and us." Peck Bentley Decl., Exhibit 1 at 9; Peck Baker Decl., Exhibit 1 at 12. Plaintiffs rely on their narrow view that only Citibank and Plaintiffs can compel arbitration to argue that Defendants may not compel arbitration because the arbitration agreements were not amended by a written agreement between Citibank and Plaintiffs. *See* Oppo. at 12, 17-19. Because this Court has already found that the arbitration agreements contemplate that assignees may compel arbitration, Plaintiffs' argument fails. Based on the foregoing analysis, the Court concludes that the plain language of the arbitration agreements allow assignees to compel arbitration.[3]

      c.    Evidence of Assignment

Plaintiffs next argue that Defendants have not provided evidence establishing that Midland acquired all rights under the credit card agreements. Oppo. at 12-17. They assert that the bills of sale and assignment provided by Defendants to evince Citibank assigned the right to arbitrate to Midland do not permit the Court to determine what rights Citibank sold to Midland. *Id.* In support, they highlight language from the bills of sale and assignment explaining that they are "subject to the terms and conditions of the Purchase and Sale Agreement[s]." Peck Bentley Decl., Exhibit 2; Peck Baker Decl., Exhibit 2. They argue that absent the purchase and sale agreements, the Court cannot determine whether the right to arbitrate was assigned to Midland. Oppo. at 12-17.

With the motion, Defendants produced business records maintained in the normal course of business, including those obtained from Citibank. Defendants submitted two

---

[3] Plaintiffs do not contend that MCM and Encore, as nonsignatories, do not have standing to compel arbitration *See* Oppo. In any event, the Court finds that MCM and Encore do have standing. *See Rossi Fine Jewelers, Inc. v. Gunderson*, 648 N.W.2d 812, 815 (S.D. 2002) (stating that under South Dakota law, a nonsignatory may compel arbitration when "all the claims against [it] are based on alleged substantially interdependent and concerted misconduct by both the nonsignatories and one or more of the signatories to the contract"); *see also* SCAC ¶ 21 (alleging that Defendants work in concert to engage in violations of the TCPA because Encore allegedly raises money used by Midland to acquire debts and MCM collects those debts).

declarations of William Peck and two business records affidavits of McKenzie Kilbury, both employed by Citibank as document control officers, to show that Plaintiffs entered into credit card agreements with Citibank and that Midland is the assignee of Citibank with the right to enforce the arbitration agreements. *See* Peck Bentley Decl.; Peck Baker Decl.; Kilbury Bentley Aff.; Kilbury Baker Aff. Defendants also produced the declaration of Sean Mulcahy, a media manager at MCM tasked with maintaining and overseeing media, including loan agreements, account purchase and transfer information and related documents, debt collection records, and other account information. Doc. No. 601-2 ("Mulcahy Decl.") ¶ 3. As indicated above, the documents also include an exemplar of a credit card agreement that relates to Plaintiffs' accounts which opened in 1996 and 2006. Additionally, the documents include a bill of sale and assignment dated May 27, 2016, stating that Citibank sold, assigned, and transferred to Midland all rights, title, and interest of a portfolio of charged-off accounts "subject to the terms and conditions of the Purchase and Sale Agreement dated May 25, 2016." Peck Bentley Decl., Exhibit 2; Mulcahy Decl. ¶ 6. One of those accounts was a Shell MasterCard credit card issued by Citibank to Bentley. Mulcahy Decl. ¶ 6. According to the affidavit of Ms. Kilbury, Bentley's account was in the portfolio of accounts Citibank sold to Midland on May 27, 2016.[4] Kilbury Bentley Aff. ¶¶ 1-2. A second bill of sale and assignment, dated March 31, 2016, states that Citibank sold, assigned, and transferred to Midland all rights, title, and interest of another portfolio of charged-off accounts "subject to the terms and conditions of the Purchase and Sale Agreement dated March 28, 2016." Peck Baker Decl., Exhibit 2; Mulcahy Decl. ¶ 7. One of those accounts was a Sears MasterCard credit card issued by Citibank to Baker. *See* Mulcahy Decl. ¶ 7. According to another affidavit of Ms. Kilbury, Baker's account was in the portfolio of accounts

---

[4] Additionally, the documents include the affidavit of Tina Weeden, another document control officer employed by Citibank, dated December 1, 2016, explaining that Bentley's Citibank account was "sold to Midland Funding LLC." Kilbury Bentley Aff., Exhibit A at 11. There is not a similar affidavit regarding Baker's account.

Citibank sold, assigned, and transferred to Midland on March 31, 2016. Kilbury Baker Aff. ¶ 2. Midland also produced printouts of electronic data concerning Plaintiffs' accounts that it received from Citibank in the May 27, 2016 and March 31, 2016 sales. *Id.*; Kilbury Bentley Aff. ¶ 2. This data includes Plaintiffs' credit card agreements, fact sheets, and account statements. Kilbury Bentley Aff., Exhibit A; Kilbury Baker Aff., Exhibit A.

In reply to Plaintiffs' opposition, Defendants attach the declaration of Sarah Banda, an assistant secretary at Midland, who attests to the validity of two attached purchase and sale agreements pertaining to the sale of Plaintiffs' Citibank accounts to Midland. Banda Decl., Exhibits A-B. The purchase and sale agreements state that Midland agreed to purchase from Citibank "all right, title and interest" of Citibank in and to the accounts. Banda Decl., Exhibit A at 6, Exhibit B at 35. This is repeated throughout the agreements. *See* Banda Decl., Exhibit A-B. Additionally, section 6.12 of the agreements state that Midland "shall not initiate an arbitration proceeding in a collection action against a Cardholder based on a provision in an Account Document authorizing arbitration without prior written approval of [Citibank], and [Midland] shall provide [Citibank] with prior written notice in the event [Midland] otherwise initiates an arbitration action in a dispute with a Cardholder based on a provision in an Account Document authorizing arbitration."[5]  Banda Decl., Exhibit A at 17, Exhibit B at 46.

The Court finds the documents proffered by Defendants are sufficient to prove that Citibank assigned all rights, including the right to compel arbitration, to Midland. Accordingly, the Court finds that Defendants have standing to compel arbitration pursuant to the arbitration agreements, regardless of their being nonsignatories to the credit card agreements. As such, the first prong of the Court's inquiry is satisfied as the

---

[5] The litigation restriction regarding arbitration is not implicated because this is not a collection action against Plaintiffs and it appears Defendants provided written notice to Citibank of the potential arbitration action because Defendants attached several declarations of Citibank employees to the instant motion.

Court concludes there are valid agreements to arbitrate between the parties by virtue of the credit card agreements between Plaintiffs and Citibank. *See Kroeplin Farms Gen. P'ship v. Heartland Crop Ins.*, 430 F.3d 906, 911 (8th Cir. 2005) (noting that under South Dakota law, the assignee stands in the same shoes as the assignor) (quoting *In re Estate of Wurster*, 409 N.W.2d 363, 366 (S.D. 1987) (Wuest, C.J., dissenting).

## C. **Delegation of Aribtrability Determination**

Having determined that agreements to arbitrate exist, the Court's next determination is whether the agreements encompass the dispute at issue. *Cox*, 533 F.3d at 1119. Defendants contend the delegation provisions prevent the Court from addressing whether the dispute at issue is within the scope of the arbitration agreements. Mtn. at 21-24. Plaintiffs do not challenge this contention. *See generally*, Oppo.

Language in an agreement "delegating to the arbitrators the authority to determine 'the validity or application of any of the provisions of' the arbitration clause[] constitutes 'an agreement to arbitrate threshold issues concerning the arbitration agreement,'" and in doing so "clearly and unmistakably indicates [the parties'] intent for the arbitrators to decide the threshold question of arbitrability." *Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011) (quoting *Rent-A-Ctr.,* 561 U.S. at 68). "[A] court must enforce an agreement that . . . clearly and unmistakably delegates arbitrability questions to the arbitrator[.]" *Brennan v. Opus Bank*, 796 F.3d 1125, 1132 (9th Cir. 2015).

Here, the delegation clauses contained in the arbitration agreements state that "[a]ll Claims relating to your account, a prior related account, or our relationship are subject to arbitration, including Claims regarding the application, enforceability, or interpretation of this Agreement and this arbitration provision." Peck Bentley Decl., Exhibit 1 at 8; Peck Baker Decl., Exhibit 1 at 11. The Supreme Court and the Ninth Circuit have determined that similar language is sufficient to demonstrate a clear and unmistakable intent to arbitrate arbitrability. *See e.g.*, *Rent-A-Ctr.*, 561 U.S. at 68 (concluding that language that an arbitrator "shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of th[e] Agreement, including . . .

16

any claim that all or any part of this Agreement is void or voidable" demonstrates a clear and unmistakable intent to arbitrate arbitrability); *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1209 (9th Cir. 2016) (indicating that language delegating to the arbitrators the authority to decide issues relating to the "enforceability, revocability or validity of the Arbitration Provision . . . clearly and unmistakably indicates [the parties'] intent for the arbitrators to decide the threshold question of arbitrability."); *Momot*, 652 F.3d at 988 (finding that language delegating authority to the arbitrators to determine "the validity or application of any of the provisions" of the arbitration clause was clear and unmistakable). As such, the Court finds that the delegation clauses in the arbitration agreements "clearly and unmistakably" demonstrate an intent to arbitrate arbitrability.

Despite a clear and unmistakable delegation of arbitrability, courts consider challenges to the enforceability of the delegation clause if specifically raised by a party. *Rent-A-Ctr.*, 561 U.S. at 67-76. However, if a party challenges the enforceability of the arbitration agreement as a whole and not specifically as to the delegation clause, the challenge is for the arbitrator. *Id.* In other words, "in the absence of some other generally applicable contract defense, such as fraud, duress, or unconscionability, [courts are required to enforce delegation clauses and] let an arbitrator determine the arbitrability" of any claim. *Mohamed*, 848 F.3d at 1209. Plaintiffs do not challenge, or even acknowledge, the delegation clauses. *See generally*, Oppo. Therefore, the Court "must treat [the delegation clauses] as valid under § 2 [of the FAA], and must enforce [them] under §§ 3 and 4, leaving any challenge" to the arbitrability of the parties' claims for the arbitrator. *Rent-A-Ctr.*, 561 U.S. at 72.

Accordingly, the Court **GRANTS** Defendants' motion to compel arbitration of Plaintiffs' claims on an individual basis and requires Plaintiffs Bentley and Baker to submit to the arbitrator whether their dispute is arbitrable.

## CONCLUSION

Based on the foregoing, the Court **GRANTS IN PART** Defendants' motion. Specifically, the Court **GRANTS** Defendants' motion to compel arbitration of Plaintiffs'

claims on an individual basis and **STAYS** their individual member actions (16cv2157-MMA (MDD) and 16cv2768-MMA (MDD)).  The Court **DENIES** Defendants' request to stay the putative class action in this MDL and strike class allegations because Fetai has not been compelled to arbitrate his claims.  The Clerk of Court is instructed to terminate all pending motions, deadlines, and hearings, and administratively close Plaintiffs' individual cases (16cv2157-MMA (MDD) and 16cv2768-MMA (MDD)).  The parties must notify the Court within seven (7) days of the conclusion of arbitration proceedings.

**IT IS SO ORDERED**.

Dated:  January 31, 2019

Hon. Michael M. Anello
United States District Judge